## JOHN W. BECHTEL *vs.* JOSEPH M. CONE.

*Parol Contract—Executed Contract—Statute of Frauds—
Waiver of a Condition precedent—Facts insufficient to war-
rant the treating of a Contract as abrogated—Right of
action—Acts which constitute a binding Contract for the Sale
of a house—Specific performance—Decree for the execution of
a Deed.*

It was verbally agreed between A. and B. that A. should do the
plumbing and gas-fitting in ten houses of B. for the sum of $2050.
Subsequently another contract was verbally made between the par-
ties, that A. should take a certain house of B. at the price of $1200,
subject to a certain mortgage resting on it, in part payment of the
work, and the balance only in money. The work contracted for
was all done, and some extra work besides, all of which was satis-
factory. It was in evidence that an appointment was made for a
settlement, and that A. directed certain attorneys to examine the
title, and prepare a deed for the house, which was done, and he
paid for its preparation. The deed was executed by B. and left
with the Justice of the Peace who took the acknowledgment, for
A. who called to get it, but declined to receive it, because certain
tax receipts had not been left with it, and for no other reason; of
this refusal or the reason for it, B. had no notice. A. testified that
all the taxes were to be paid by B. before he was to take the prop-
erty, and B. admitted he was to pay the taxes in arrear, but did not
understand it was a condition precedent to the consummation of
the agreement. Subsequently to the execution of the deed, and its
being left with the Justice for A., the parties met and settled for
the work done. The price of the house was deducted from the
gross cost of the work done, and the cash or its equivalent was
paid for the residue, and A. executed a receipt in full. At that
time, A. asked for the tax bills and receipts, and B. promised they
should be sent to him. At the time of the settlement, B. gave A.
an order on the tenant of the house for the rent; and for fourteen
months thereafter, A. received the rent from the tenant, and paid
one year's ground-rent. Meanwhile the deed remained in the hands
of the Justice, and never was taken away; though B. was never
notified thereof. A. in August, 1876, offered the house for sale at

Bechtel *vs.* Cone.

public auction, but it was not sold, the price asked for it not being bid. A. received the rents from the tenant till about July, 1877. A. testified that when he agreed to take the house, the mortgage resting on it, was stated to be $1200 ; the deed which was prepared for him recited that it was subject to a mortgage of $1250. A. stated that after the settlement and the receipt of the order for the rent, he examined the house, and found it did not come up to representation. He gave no notice, however, of exception either on account of its defects or of the excess of the mortgage claim over the alleged representation. A. admitted that at the time of the bargain or negotiation, B. requested him to examine the house for himself, B. being notified by the mortgagee at one time that he had some difficulty in getting his mortgage claim fixed up by A. because of some unpaid taxes. B. paid them, and told A. who said it was " all right," and afterwards saw the mortgagee and promised to pay the interest. In an action of assumpsit by A. to recover from B. a balance alleged to be due, it was HELD :

1st. That assuming the facts stated, to be true, the contract for the purchase of the house had become an executed contract by the payment of the purchase money and the entry into possession and exercise of all the acts of ownership ; so that it was wholly " extracted from " the operation of the Statute of Frauds.

2nd. That if the payment of the taxes were originally intended to be a condition precedent to the consummation of the arrangement, the evidence of the conduct of A. afterwards, was sufficient to warrant a jury in finding a waiver, under instruction from the Court; and the subsequent notice of taxes in arrear and of distress for the same, of which A. gave no notice to B. did not warrant his treating the contract as abrogated thereby.

3rd. That if A. had paid the taxes, he would, under their arrangement, have had a right of action against B., but he could not at that time repudiate the contract and abandon the house.

4th. That in order to make the contract for the sale of the house a binding one on A., it was not necessary that a deed should have passed; his acceptance of possession, and exercise of all the acts of ownership for so long a time, and the payment of the purchase money by his work, as was agreed, would have entitled him to a specific performance and to a decree for the execution of a deed to him ; and *e converso*, B. was entitled to hold him to the contract, in the absence of fraud, of which there was no proof.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—The testimony having been closed, the plaintiff offered the following eight prayers:

1. That if the jury shall find from the evidence before them, that the plaintiff agreed with the defendant to do the plumbing and gas-fitting work, and furnish the materials necessary therefor in certain houses of the defendant, for a price agreed upon between them, and that he did the work and furnished the materials in accordance with his said contract, and that other work not provided for by the said contract, was also done by the plaintiff and materials for the same furnished at the defendant's request, during the construction of the said houses, then the plaintiff is entitled to recover the said contract price, and the fair value of the said extra work and materials, less whatever the jury may find that he has received on account of the same, with interest upon the said balance from the date of completion of all the said work, in their discretion.

2. That the defendant cannot rely in support of his pleas of payment or set-off upon the contract between himself and the plaintiff, to receive his interest in a certain house on Gilmor street, in part payment for the work and materials in the plaintiff's first prayer mentioned, unless they shall find that the said agreement, or some memorandum or note thereof, was reduced to writing and signed by the plaintiff, or some person thereunto by him lawfully authorized, and that there is no evidence of such reduction to writing and signature.

3. That the defendant cannot rely in support of his pleas of payment or set-off upon the alleged conveyance to the plaintiff of his interest in a house on Gilmor street, unless they shall find that a deed for the same was delivered to and accepted by the plaintiff, or some person thereunto by him lawfully authorized, and that there is no evidence of such delivery and acceptance.

4. That under the pleadings, there is no evidence in this cause legally sufficient to enable the jury to find for the defendant upon the issue joined on his plea of set-off.

5. That the Court to exclude from the consideration of the jury the deed purporting to convey to him the defendant's interest in a house on Gilmor street, there being no evidence that the same conveyed any title in the said property.

6. That if the jury shall find from the evidence that the plaintiff agreed to accept a conveyance of the defendant's interest in a house and lot on Gilmor street, in part payment for the work and materials in the plaintiff's first prayer mentioned, upon condition that all taxes upon the said house and lot should be paid by the defendant up to the date of completing the said work, and that the said taxes were not so paid at that time, or within a reasonable time thereafter, then the plaintiff is entitled to repudiate the said agreement, and to recover in this action as though he had never entered into the same.

7. That if the jury shall find from the evidence that the plaintiff agreed to accept a conveyance of the defendant's interest in a house and lot on Gilmor street, in part payment for the work and materials in the plaintiff's first prayer mentioned, and that he was induced to so agree by representations of the defendent, as to the value of the said house and lot, the amount of encumbrances upon the same, and the manner in which the said house was fitted up, which representations were in fact false, and known by the defendant to be such at the time of his making them, then the plaintiff is entitled to repudiate the said agreement, and to recover in this action as though he had never entered into the same.

8. That if the jury shall find from the evidence that the plaintiff agreed to accept a conveyance of the defendant's interest in a house and lot on Gilmor street, in part payment for the work, and materials furnished by him to

the defendant, and that he was induced to so agree by
representations of the defendant, as to the value of said
house and lot, the amount of the encumbrances upon the
same, and the manner in which the said house was fitted
up, which representations were in fact false, and known
by the defendant to be such at the time of his making
them, then the plaintiff is entitled to repudiate the said
agreement, and recover in this action, as though he had
never entered into it; unless they shall further find that the
plaintiff after discovering the falsity of the said represen-
tations, or when he might have discovered their falsity by
the exercise of reasonable diligence, (*agreed to adhere to
the said contract, or took action from which the defendant
might reasonably infer that he intended to adhere to the same.*)

The Court (DOBBIN, J.,) granted the fourth prayer of
the plaintiff, and rejected his first, second, third, fifth,
sixth and seventh, absolutely, and rejected the eighth as
offered, but granted it with a modification which consisted
in striking out the part of the prayer in italics and
brackets, and substituting therefor the following: "*En-
tered into the possession of the said property by collecting
the rents thereof, and paying the ground rent thereon, from
which acts, if the jury shall find them, amount to a waiver
of objection to said representations.*"

And the defendant offered the three following prayers:

1. If the jury shall find from the evidence, that the
plaintiff and defendant entered into an agreement for the
doing of certain plumbing work by the plaintiff, in ten
houses on Carey street, which were built by the defendant,
in consideration of the sum of two thousand and fifty
dollars, eight hundred and fifty dollars to be paid in cash
as the work progressed, and the balance in the interest
which Cone had in a house on Gilmor street; and shall
further find, that after the work was performed by the
plaintiff, a deed for the said house was drawn by Mess.
Brown and Smith for the plaintiff, and that said deed

was given to Cone to be acknowledged and left with Justice McCaffray, before whom it was acknowledged by said Cone, with directions to deliver it to the plaintiff; and shall further find that the plaintiff called at the office of said justice and refused to receive the said deed because some paper was not left with it; and shall further find that afterwards, on the 25th day of April, 1876, the said plaintiff and defendant made a settlement between them in relation to the amount of such contract, and also to all extra work done by the plaintiff for the defendant; and shall also find that the plaintiff took possession of said house on Gilmor street, in March, 1876, and collected the rent therefor for a long time thereafter, paid the ground rent, and offered the said property at public auction, *then* the claim of the plaintiff in this case has been paid by the defendant, and the plaintiff is not therefore entitled to recover in this action, although the jury may believe that certain taxes remained due upon said property.

2. That unless the jury find from the evidence that the plaintiff, after the settlement made between the plaintiff and defendant, on the 25th of April, 1876, gave notice to the defendant that there were taxes due upon the property on Gilmor street, and demanding that they be paid, and that the defendant refused or neglected to pay such taxes, then the plaintiff was not authorized to treat the contract between himself and defendant as rescinded (*and to sue for the value of the said house, or for his services, and the plaintiff is not therefore entitled to recover in this case.*)

3. That if the jury believe from the evidence, that on or about the 25th day of April, 1876, the plaintiff and defendant made a settlement between them of all matters of account then open between them, and that after such settlement the said plaintiff took possession of the property on Gilmor street, and had notice that the deed for such property was at Justice McCaffray's, subject to his

order, then the plaintiff is not entitled to recover in this case.

The Court granted the first and third prayers of the defendant as offered, and the second was modified, by striking out the portion in brackets and italics.

To the action of the Court in rejecting his first, second, third, fifth, sixth and seventh prayers, absolutely, and his eighth as offered, and in granting the first and third prayers of the defendant as offered, and his second prayer with a modification, the plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*W. Hall Harris* and *Charles J. Bonaparte,* for the appellant.

*Richard S. Culbreth* and *Samuel Snowden,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellant sued the appellee in the Superior Court of Baltimore City, in an action of *assumpsit.* The declaration was for goods bargained and sold, work and labor done, and contained the ordinary money counts. The defendant pleaded never indebted, never promised, payment and set-off. It was admitted that there was a verbal contract between the appellant and appellee, that the appellant should do the plumbing and gas-fitting in ten houses of the appellee, for the sum of two thousand and fifty dollars in money. After making that contract, it appears that another contract was verbally made between the parties, that the appellant should take a certain house of the appellee, at the price of twelve hundred dollars, subject to a certain mortgage resting on it, in part pay-

ment for the work, and the residue only in money.   The only questions in the case grow out of this new contract, (whereby the mode and terms of payments provided for in the first contract, were designed to be changed,) and arise upon the prayers granted and refused.   It is urged by the appellant that there were conditions precedent to be performed by the appellee, before the contract was to be consummated ; that there were representations concerning the property which proved untrue, and justified his repudiating the contract; and that being a contract for an interest in lands, it is within the fourth section of the Statute of Frauds and void, because the same was not reduced to writing.   To determine whether the Superior Court ruled correctly on the prayers, which were intended to present the several phases of these questions, it is necessary to review briefly the facts bearing thereon.   .

After the making of this verbal contract for the sale of the house on the one side, and its acceptance in part payment for work done, on the other, it is admitted that the work contracted for was all done, and some extra work besides, all of which was satisfactory.   It is in evidence, that an appointment was made for a settlement, and that the appellant directed certain attorneys to examine the title and prepare a deed for the house, which was done, and he paid for its preparation.   It was also proved that the deed was executed by the appellee, and left with the justice who took the acknowledgment, for the appellant, who called to get it, but declined to receive it because certain tax receipts had not been left with it, and for no other reason ; but it was admitted the appellee had no notice of this refusal, or the reason for it.   The appellant testified that all the taxes were to be paid by the appellee before he was to take the property.   The appellee admitted he was to pay the taxes in arrear, but did not understand it was a condition precedent to the consummation of the agreement.   Subsequently to the execution of the deed, and

its being left with the justice for the appellant, the parties met and settled for the work done. The price of the house was deducted from the gross cost of the work done, and the cash or its equivalent was paid for the residue, after deducting the house, and the appellant executed a receipt in full. At that time the appellant asked for the tax bills and receipts and the appellee promised they should be sent to him.· At the time of this settlement, the appellee gave the appellant an order on the tenant of the house for the rent; and for fourteen months thereafter the appellant received the rent from the tenant, and paid one year's ground rent. Meanwhile the deed remained in the hands of the justice and never was taken away; though the appellee was never notified thereof, notwithstanding they had met sundry times.

The appellant, in August, 1876, advertised the house, and offered it at public auction, but the auctioneer said the price the appellant put on it was not bid, and it was not sold. The appellant received the rents from the tenant till about July, 1877. The appellant testified, that when he agreed to take the house, the mortgage resting on it was stated to be $1200. The deed which was prepared for him recites that it is subject to a mortgage of $1250. He also states, that shortly after the settlement, and his getting the order for the rent, he called to examine the house and found it did not come up to representation. He gave no notice of exception, either on account of the defects in the house, or the excess of mortgage over the alleged representation. The appellant admitted, that at the time of the bargain or negotiation, the appellee requested him to go and look at the house for himself. The first notice the appellee had of discontent was this suit. Appellee being notified by the mortgagee at one time, that he had some difficulty in getting his mortgage claim fixed up by the appellant, because of some unpaid taxes, the appellee paid them and told the

appellant, who said it was "all right," and afterwards saw the mortgagee and promised to pay the interest. Assuming all these facts to be true, we have no hesitation in deciding, that the contract for the purchase of the house had become an executed contract, by the payment of the purchase money and the entry into possession, and exercise of all the acts of ownership; so that it was wholly "extracted from" the operation of the Statute of Frauds. It comes fully up to the case of *Dugan, et al. vs. Gittings, et al.,* decided by this Court in 3 *Gill,* 157, wherein it is said, "there are to be found in this case two ingredients, which, when combined, have always been regarded as relieving a parol agreement from the operation of the Statute—performance of the condition, and change of possession under the contract." This is the established law in this State, and everywhere. If the payment of the taxes were originally intended to be a condition precedent to the consummation of the arrangement, the evidence of the conduct of the appellant afterwards, was sufficient to warrant a jury in finding a waiver, under instruction from the Court; and the subsequent notice of taxes in arrear, and of distress for the same, of which the appellant gave no notice to the appellee, did not warrant his treating the contract as abrogated thereby. If he had paid them, he would, under their arrangement, have had a right of action against the appellee, but he could not at that time repudiate the contract, and throw up the house.

The first and second prayers wholly ignore all the evidence, which, if the jury should find to be true, would warrant a verdict for the defendant, and were, therefore, properly rejected.

The third prayer was correctly refused, for in order to make the contract for the sale of the house a binding one on the appellant, it was not necessary that a deed should have passed at all. His acceptance of possession, and

exercise of all the acts of ownership for so long a time, and the payment of all the purchase money by his work, as was agreed, would have entitled him to specific performance, and decree for execution of a deed to him, and *e converso,* the appellee was entitled to hold him to the contract, in the absence of fraud, of which there is no sign or proof. The fifth, sixth and seventh prayers, proceed upon a theory, which excludes from the consideration of the jury all the evidence establishing a waiver. For the reasons already set forth, it is evident, that the eighth prayer of the appellant was properly modified by the Court, and granted as modified; and that there was no error in the instructions on the behalf of the defendant.

The judgment will be affirmed with costs.

*Judgment affirmed with costs.*

(Decided 13th January, 1880.)