WATTS v. WITT.

1. RECOVERY OF REAL PROPERTY—FRAUD IN PLAINTIFF'S TITLE.—In action for the recovery of real property, the defendant in possession may defeat the claim of plaintiff by showing that plaintiff's title is defective by reason of fraud in one of the links in plaintiff's chain of title, without regard to the relation of such fraud to defendant's rights.

2. STATUTE OF FRAUDS—PART PERFORMANCE—TITLE.—Where a party takes and retains possession of land under a parol agreement that it will be conveyed to her whenever she makes full payment, and she does afterwards make such payment, there is such part performance as will take the agreement out of the statute of frauds, and entitle her to specific performance; and she is then in position to assail a deed fraudulently made for the purpose of defeating her right to specific performance.

3. VENDOR AND VENDEE—ADVERSE POSSESSION.—Where a party goes into possession of land under a parol agreement to receive deed when full payment is made, while she cannot claim to hold adversely to the legal title before full payment made, unless she notifies the legal owner of her adverse claim, yet after such payment, her exclusive possession is adverse to her vendor, and ripens into title at the expiration of the statutory period.

Before WITHERSPOON, J., Orangeburg, September, 1891.

. This was an action by Rhoda Watts against Jacob F. Witt and Cornelia J. Witt for the recovery of a tract of land. Master A. C. Dibble reported as follows:

The master for said county, to whom it was referred, by an. order of this court made in the above entitled action, and bear-

ing date June 1st, 1888, to hear and determine all the issues contained in and raised by the pleadings therein, and to report his conclusions thereon to this court, together with any special matter that may arise, would ask to report:

This is an action for the recovering of the possession of a tract of real estate in this county and for damages. It appears from the papers that it was originally commenced against the defendant, Jacob F. Witt, alone, the first summons being dated April 1st, 1876, but the time of the service of such summons on the said defendant is not shown, the original summons and complaint having been lost or mislaid, and a substituted copy of same having been filed and used under the order of this court, made November 19, 1887, by which order the said Jacob F. Witt had leave to answer the same within twenty days from the filing thereof. The said substituted summons and complaint were filed November 21st, 1887, and due notice of the filing of same was served upon the attorney of said Jacob F. Witt.

The said Jacob F. Witt thereupon answered the said complaint, alleging, among other things, that his wife, Cornelia J. Witt, was, at the commencement of said action, and at the time of filing his said answer, the owner of the premises described in the complaint as her separate property, and in the actual, exclusive and adverse possession thereof. On April 5, 1888, upon the application of the plaintiff, and after due notice to the said Jacob F. Witt, the court made an order granting leave to the plaintiff to amend her summons and complaint by adding the name of said Cornelia J. Witt as a party defendant therein, with proper words to charge her, and that the said Cornelia J. Witt be served with said amended complaint, and that they have twenty days to answer same, and that the case then proceed as if the said Cornelia J. Witt had originally been a party thereto. The said amended summons and complaint were served on said Cornelia J. Witt on April 12, 1888, and on the same day the amended complaint was served on the said Jacob F. Witt.

To the said amended complaint the defendants answered separately, the said Jacob F. Witt filing the same answer sub-

mitted by him to the original complaint in the action, containing three defences: First, a general denial; secondly, that plaintiff is not the owner or entitled to the possession of said premises, but that said Cornelia J. Witt, wife of said Jacob F. Witt, is the owner of said property as her separate property, and is in the actual, exclusive, and adverse possession thereof, and that she has held and possessed the said premises adversely to the pretended title of the plaintiff for more than ten years last past under a claim of title in fee, exclusive of any other right, and that his possession has been under the title of said Cornelia J. Witt and in her right; and, thirdly, that at a sale of said premises, had on April 6, 1874, he bid the same off for the said Cornelia J. Witt, and in accordance with a previous understanding between said Cornelia J. Witt and one J. R. Watts, had said bid set down to said J. R. Watts, and that afterwards said J. R. Watts, at the request of said Cornelia J. Witt, paid said bid with moneys furnished by and belonging to her, and took the conveyance in his own name, and although acknowledging that said premises were purchased with funds of said Cornelia J. Witt, the said J. R. Watts refused to execute a conveyance for same to her, but with intent to defraud the said Cornelia J. Witt, and in violation of his trust, conveyed the premises to his wife, the plaintiff, who was, before and at the time of the execution of said conveyance, fully informed of the facts connected with said purchase, and of the rights and equities of said Cornelia J. Witt, and that said conveyance of J. R. Watts to the plaintiff is without consideration, fraudulent and void.

The defendant, Cornelia J. Witt, in her answer, makes the same defences to the action as are set up in the answer of said Jacob F. Witt, and specially pleads that neither the plaintiff, her ancestor, predecessor, or grantor was seized or possessed of the said premises, or any part thereof, within ten years before the commencement of this action against her, and that she has held and possessed the said premises adversely to the pretended title of plaintiff for ten years last past before the commencement of this action against her, under a claim of right exclusive of any other right; and she prays that the con-

veyance from J. R. Watts to the plaintiff be declared fraudulent and void, and that she have such other and further relief as is just and equitable.

I have held several references in the action, at which the parties were represented by their counsel, and have taken such testimony as was submitted by the parties, and they have been as fully heard as they desired to be, both in testimony and argument, and from the testimony taken, I find the facts to be as follows:

1. That on April 6, 1874, under a judgment of foreclosure, duly obtained and rendered in an action in this court, in which Charles B. Glover, assignee, was plaintiff, and Jacob F. Witt and others were defendants, the real estate described in the complaint was sold by E. I. Cain, then sheriff of this county, and was bid off by the defendant, Jacob F. Witt, in the name of one J. R. Watts, for the sum of fifty-three dollars.

2. That the said J. R. Watts afterwards, on April 24, 1874, complied with the terms of said sale by paying half of said bid, twenty-six and 50-100 dollars, in cash, and giving his bond, secured by a mortgage of said premises, to the said sheriff, for the credit portion of the purchase money (the other half of said bid, and the like sum of twenty-six and 50-100 dollars), with interest from date of sale, and payable April 6, 1875, which bond and mortgage were paid and satisfied by the said J. R. Watts on April 5, 1875, the amount then due being twenty-eight 35-100 dollars, and twenty-five cents for satisfying the mortgage upon the records in the register's office.

3. That before the said sale, and some time during the year 1873, the said Jacob F. Witt, acting as the agent of his wife, Cornelia J. Witt, and the said J. R. Watts agreed to go into the saw mill business together, and to use for the purposes of said business a tract of 100 acres, in Lexington County, in this State, and adjoining the tract in dispute in this case, a tract in the same county, on which the mill was located, and the tract in dispute—all of which real estate then belonged to the said Jacob F. Witt. They also agreed to purchase another tract of 887 acres, in said County of Lexington, in the name of said J. R. Watts, from one Livingston. The said Jacob F. Witt, at

this time, was very much involved in debt, and the above mentioned judgment of foreclosure, which covered the three tracts first above mentioned, had been obtained against him. They endeavored to saw up lumber enough in said saw mill business to pay off this mortgage debt, but failed to do so before a sale of the motgaged property, which was had on April 6, 1874, as above set forth.

4. That under a parol understanding and agreement had between the said Jacob F. Witt, acting as agent of his wife, Cornelia J. Witt, and said J. R. Watts, respecting the said lands, Witt was to attend the sale of the Orangeburg County land, being the tract now in dispute, and Watts the sale of the Lexington County land, which were sold on same salesday, and all of these lands were to be bid off in the name of said J. R. Watts, and the titles for same to be made to him, the milling business then to be continued. And the purchase money of these lands, and also of the Lexington tract, was to be paid from the proceeds of sales of lumber, and when the lands conveyed to Watts were paid for, he was to make title for same to the defendant, Cornelia J. Witt, the wife of Jacob F. Witt, and when the Livingston tract was paid for, she was to convey one-half interest in all the lands to J. R. Watts. And it appears that Mrs. Witt was also to have one-half interest in the Livingston tract.

5. That the amount of the purchase money of the tracts sold, and purchased under the said judgment of foreclosure, as aforesaid, was received by Watts out of the share of Mrs. Witt in the proceeds of sales of lumber sawed at said mill, and in all accounting afterwards had respecting the said mill business, the said amount was deducted from her share in the same. It does not appear, however, whether the purchase money of these lands was paid, in the first instance, from Mrs. Witt's share in this business, or whether it was paid by Watts from his own funds, and afterwards refunded to him. From all the circumstances, I am inclined to think the latter was the case. The testimony shows that $1,000 or $1,200 was paid on the Livingston tract from the general funds of the said mill business, but the mill business was discontinued in the latter

part of 1875, when Watts moved away; and it appears that this property was lost.

6. That on April 19, 1875, the said J. R. Watts conveyed the real estate in dispute to the plaintiff, his wife. This deed was recorded January 10, 1876. The consideration stated in the deed is $553; and it is also set forth therein that said conveyance is executed in accordance with an agreement entered into between the said Rhoda R. Watts and the said J. R. Watts at the time he purchased the said tract from the sheriff at public auction, the portion of the said agreement to be performed by the said Rhoda R. Watts having been fully performed by her. I am satisfied this paper was without any consideration, and that it was executed for no other purpose than to defeat any claim that Mrs. Witt may have had in the land under the before mentioned agreement and understanding between Witt and Watts respecting the said lands.

7. That some time in 1875, and after the purchase money of the land in dispute had been received by Watts from Mrs. Witt's share in lumber sold, Witt and his wife, the said Cornelia J., requested Watts to make conveyance of the property to her, and he promised that he would do so; and that at that time Witt and his wife were in the exclusive possession of said land, claiming and holding the same as the separate property of the said wife, and they have ever since then continued in the exclusive and adverse possession of said land, as the property of said wife, the defendant, Cornelia J. Witt, and that neither the plaintiff or her husband and grantor, the said J. R. Watts, has ever been in the possession of said property, or any part thereof, under a claim of title thereto.

Upon this statement of facts my conclusions are: 1. That the circumstances attending the sale and conveyance of the real estate in dispute from Sheriff Cain to J. R. Watts in 1874, do not establish a resulting trust in favor of the defendant, Cornelia J. Witt, as it has not been shown that the purchase money paid to the sheriff by Watts for the land and in settlement of his mortgage for the credit portion, was received before or at the time by Watts from the funds of Mrs. Witt. *Ex parte Trenholm,* 19 S. C., 135; *Brown* v. *Cave,* 23 *Id.,* 257. 2. Nor

does the parol agreement or understanding between the parties
as to the said purchase of said real estate entitle the defendant,
Cornelia J. Witt, to specific performance, as the said agreement
or understanding is within the statute of frauds, and, therefore,
void. *Lamar* v. *Wright*, 31 S. C., 75, and cases there cited. The
case of *Coney* v. *Timmons*, 16 S. C., 378, cited by defendants'
attorneys, is not in point in this case, as there was a change of
possession in that case, which was sufficient to take the agree-
ment out of the statute of frauds. Besides, in this case the
party with whom the agreement or understanding was had, is
not a party to this action, and it can hardly be contended that
his grantor can be compelled to specifically perform a contract
made by him.

3. Nor can the deed of conveyance from Watts to his wife,
although without consideration, and executed for the purpose
of defeating any claim of Mrs. Witt, under the understanding
or agreement had at the time of sheriff's sale, be set aside and
declared void, as the said Cornelia J. Witt has failed to sustain
any legal or equitable claim to said real estate.

4. That the defendant, Jacob F. Witt, and his wife, the said
Cornelia J. Witt, having been in the exclusive adverse posses-
sion of the real estate in dispute, and holding and claiming the
same as the separate property of the said Cornelia J. Witt for
more than ten years before the commencement of this action
against her, she, the said Cornelia J. Witt, is entitled to recover
in this action. It is true, that this possession and holding was
commenced under a void agreement, but that makes no differ-
ence. A person holding adversely during the statutory period,
under no agreement at all with the rightful owner, and without
any title whatever, will be protected.

5. That the defendant, Cornelia J. Witt, should recover the
real estate in dispute in this action; and that plaintiff should
pay the costs of this action.

The Circuit decree, omitting its recital of the master's find-
ings, was as follows:

I do not think that the master erred in his first, second, and
third conclusions of matters of law, as alleged in the exceptions

of the defendant, Cornelia J. Witt, and said exceptions *are overruled.*

As J. R. Watts paid the sheriff the purchase money of the land, no *resulting trust* can arise in favor of the defendant, Cornelia J. Witt, under the parol agreement between herself and J. R. Watts, as found by the master. If the statute of frauds did not apply to said parol agreement, it could not be enforced in this action, as J. R. Watts, a party to said agreement, is not before the court.

It is alleged in the plaintiff's exceptions that the master erred in finding as matter of fact, and in concluding as matter of law, that the defendants have been in the *adverse* possession of the land in dispute for the statutory period, claiming the same as the separate property of the defendant, Cornelia J. Witt. This is the only ground upon which the master concludes that plaintiff's complaint should be dismissed. The legal and equitable defences interposed by the defendant, Cornelia J. Witt, are somewhat *inconsistent.* Under the equitable defence, she claims the land under the parol agreement between herself and J. R. Watts. The master finds that there was a parol agreement between J. R. Watts and Cornelia J. Witt with reference to the land, but concludes that said agreement can't avail the defendant, Cornelia J. Witt. As the defendants are in possession of the land under the parol agreement with J. R. Watts, the character of their possession under said agreement could not be construed to be *adverse* until J. R. Watts, or his grantee, was notified that the defendants did not claim the land under the parol agreement, but were asserting a claim to the land *independent of said agreement.* This has not been done by either of the defendants. On the contrary, the defendants have been urging their claim to the land in dispute under the parol agreement between J. R. Watts and the defendant, Cornelia J. Witt. I cannot concur in the master's findings as matter of fact, or in his conclusions as matter of law, that the defendants have been in the *actual exclusive adverse* possession of the land as the separate property of the defendant, Cornelia J. Witt, for the statutory period. To this

extent the master's report *is overruled,* and the plaintiff's exceptions to said report are sustained.

The evidence sustains the master's finding as matter of fact that the deed from J. R. Watts to the plaintiff was without consideration, and was executed for the purpose of defeating any claim that Cornelia J. Witt may have had to the land in dispute, and the plaintiff's first exception *is overruled.*

It is ordered and adjudged, that so much of the master's report as finds as matter of fact, as well as the master's conclusions as matter of law, that the defendants have had the actual exclusive adverse possession of the land in dispute, as the separate property of the defendant, Cornelia J. Witt, for the statutory period, as well as the master's conclusion that the defendant, Cornelia J. Witt, is entitled to recover in this action, and that the plaintiff pay costs, is *hereby overruled.* In all further respects the master's report is confirmed, and the exceptions to said report are overruled. It is further ordered and adjudged, that the plaintiff, Rhoda Watts, have judgment, with leave to enter up execution against the defendants, Jacob F. Witt and Cornelia J. Witt, for the recovery of the possession of the tract of land described in the complaint herein, with costs.

Defendants appealed.

*Messrs. Glaze & Herbert,* for appellants.

*Messrs. Johnstone & Cromer* and *Moss & Dantzler,* contra.

June 26, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action to recover possession of real estate. The facts of the case are so fully and clearly stated in the report of the master and in the decree of the Circuit Judge (both of which should be incorporated in the report of the case), that we deem it unnecessary to do more than to give an outline of the general facts necessary to a proper understanding of the two questions upon which this appeal must turn.

The land in dispute originally belonged to the defendant,

Jacob F. Witt, and was sold by the sheriff under a judgment against him on the 6th of April, 1874. At that sale the land was bid off by said Jacob F. Witt, in the name of one J. R. Watts, who paid the purchase money and took title to himself, under an alleged parol agreement made between Jacob F. Witt, acting as the agent of his wife, the defendant, Cornelia J. Witt, and the said J. R. Watts, that said Witt was to bid off the land in the name of said Watts and have titles made to him, but when said Watts was refunded the purchase money, he was to make titles to the said Cornelia J. Witt. The master's seventh finding of fact is in these words: "That some time in 1875, and after the purchase money of the land in dispute had been received by Watts from Mrs. Witt's share in lumber sold, Witt and his wife, the said Cornelia J., requested Watts to make conveyance of the property to her, and he promised that he would do so; and that, at that time, Witt and his wife were in the exclusive possession of said land, claiming and holding the same as the separate property of the said wife, and they have ever since then continued in the exclusive and adverse possession of said land, as the property of said wife, the defendant, Cornelia J. Witt, and that neither the plaintiff or her husband and grantor, the said J. R. Watts, has ever been in the possession of said property, or any part thereof, under a claim of title thereto." The master also finds as a fact, that on the 19th of April, 1875, the said J. R. Watts conveyed the land in dispute to the plaintiff herein, his wife, by a deed which was recorded 10th of January, 1876. But the master also finds as follows: "The consideration stated in the deed is $553; and it is also set forth therein, that said conveyance is executed in accordance with an agreement entered into between the said Rhoda R. Watts and the said J. R. Watts, at the time he purchased the said tract from the sheriff at public auction, the portion of the said agreement to be performed by the said Rhoda R. Watts having been fully performed by her. I am satisfied this paper was made without any consideration, and that it was executed for no other purpose than to defeat any claim that Mrs. Witt may have had in the land under the before mentioned agreement and understanding between Witt and

Watts respecting the said lands;'' and this finding of fact by the master is expressly sustained by the Circuit Judge.

Upon the facts as they appear in the report of the master and in the decree of the Circuit Judge, of which the foregoing is but a bare outline, two leading and controlling questions arise: 1st. As to the effect of the fact found both by the master and the Circuit Judge, that the deed from J. R. Watts to the plaintiff, constituting one of the links in her chain of title, was tainted not merely with constructive, but with actual, moral fraud. 2d. Whether the defendant succeeded in establishing her claim to hold the land in dispute by adverse possession.

As to the first question, both the master and the Circuit Judge seem to have treated the question as if it had arisen in a case where the defendant invoked the active interference of the court to set aside a deed for fraud, where it may be true that, as held below, a court of equity would not exert its power to set aside a fraudulent deed, except at the instance of a party who shows that he has suffered or is likely to suffer some prejudice to his legal or equitable rights by such fraud; hence when it was held below (whether correctly or not we shall presently consider) that the defendant had no rights of either character, under the parol agreement above referred to, she was not in a position to question the validity of the fraudulent deed to the plaintiff. We are inclined to think, however, that such a view is not applicable to the present case. Hence the action is not of that character. On the contrary, it is an action brought by the plaintiff to recover possession of real estate, of which she never had possession, and her right to recover depends solely upon the establishment of her superior legal title. She must, under the well settled rule, depend entirely upon the strength of her own title, and not upon the weakness of her adversary's. A defendant in possession may either fold his arms and await the establishment of plaintiff's title, or he may show a superior title in some third person, and until the plaintiff shows a title superior to all the world, the defendant is entitled to retain possession. When, therefore, it appears that one of the links in plaintiff's title is defective or void, for fraud or other cause, the plaintiff fails to estab-

lish superior title, and the action fails on that account.  Any other view would permit a party to take advantage of his own wrong.

But waiving this, it seems to us that there is another ground upon which the ruling below must be held to be erroneous. That ruling rests upon the assumption that the parol agreement set up by the defendant was void under the statute of frauds.  It has long been settled, however, that part performance will take a case out of this statute; and the practical inquiry here is whether there has been such part performance in this case as will have that effect.  What is such part performance of a verbal agreement for the sale of land as will be sufficient to take the case out of the statute, is a question upon which much has been said in the various cases in which the question has arisen; and it must be admitted that there is no little conflict of opinion upon the subject.  The doctrine that part performance of a verbal agreement for the sale of real estate will take a case out of the operation of the statute of frauds, is a creature of the Court of Equity, and rests upon the ground of equitable fraud (3 Pom. Eq. Jur., § 1409), or, as it is said in some of the cases, a court of equity will not permit a statute designed to prevent frauds to be used as an instrument to effect a fraud.  Without undertaking anything like a review of the cases, it is sufficient for us to say here that we think the rule upon the subject is well stated in a note to 8 Am. & Eng. Enc. Law, at page 742–3, upon the authority of *Bechtel* v. *Cone*, 52 Md., 698, and *Rook* v. *Jameson*, 67 Iowa, 202, in the following language: "Where everything has been done on both sides, save the mere delivery of the deed, so that the holder of the legal title has become a bare trustee, equity will compel the delivery."

Now, in this case, it appears that the defendant, Cornelia J. Witt, was allowed to take and retain possession for about thirteen years after the parol agreement was made, and after the purchase money had been fully paid, and nothing remained to be done by either party except to deliver the deed, and under the rule she was entitled to specific performance of such agreement, and hence the deed under which plaintiff claims, having

been made with intent to defraud her and defeat her right to specific performance, was absolutely void, and vested no title whatever in the plaintiff. Indeed, since the cases of *Roberts* v. *Smith*, 21 S. C., 455, and *Sweatman* v. *Edmunds*, 28 *Id.*, 58, the question can scarcely be regarded as an open one in this State, for in both of those cases it was held, that one who purchases land and is let into possession, and pays the purchase money, is entitled to specific performance, and for all practical purposes must be regarded as the owner.

As to the second question, we are unable to concur in the conclusion reached by the Circuit Judge, and, on the contrary, think that the master took the correct view. It is proper for us to remark, that we do not understand that the Circuit Judge differed with the master as to the facts, but only as to the legal inference to be drawn from the facts. The question of adverse possession is a mixed question of law and fact. It is very manifest from the reasoning of the Circuit Judge, that he based his conclusion upon this branch of the case solely upon the ground, that the defendants being in possession under the parol agreement with J. R. Watts, the character of their possession under said agreement could not be construed to be *adverse* until J. R. Watts or his grantee was notified that the defendants did not claim the land under the parol agreement, but were asserting a claim to the land independent of said agreement; and this not having been done, the possession could not be regarded as adverse. In this we think there was error of law. The rule, as we understand it, is, that where one goes into possession of real estate under a parol contract to buy the same, he cannot claim to hold adversely to his vendor *until the purchase money is fully paid;* but when it is paid, he then holds, not in subordination to the rights of the vendor, but in his own right, and his possession from that time becomes adverse to the vendor; and if his possession continues for the requisite period, he acquires a title under the statute of limitations. 1 Am. & Eng. Enc. Law, 230. This doctrine has been expressly recognized in this State in the case of *Ellison* v. *Cathcart*, 1 McMull., 5, where it was held that "Possession and the payment of the purchase money is a good equitable title, and

a possession of ten years under such a title is good under the statute [of] limitations." The same doctrine has been recognized, impliedly at least, in several other cases. *Richards* v. *McKie*, Harp. Eq., 184; *Secrest* v. *McKenna*, 6 Rich. Eq., 72; *Bank* v. *Smyers*, 2 Strob., 28; and *Blackwell* v. *Ryan*, 21 S. C., 123. It seems to us, therefore, that in no view of the case can the plaintiff's complaint be sustained.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.